**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| MARK A. WADE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, Acting Commissioner )<br>of the Social Security Administration, )<br>)<br>Defendant. ) | Case No. 1:15-cv-01147-TWP-MPB |

**ENTRY ON JUDICIAL REVIEW**

Plaintiff, Mark A. Wade ("Mr. Wade"), requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. For the following reasons, the Court **AFFIRMS** the decision of the Commissioner.

**I. BACKGROUND**

**A.   Procedural History**

On May 30, 2012, Mr. Wade refiled an application for SSI alleging disability beginning December 31, 2004.  (Filing No. 11-2 at 17.)  The claim was denied by the Social Security Administration; and, upon reconsideration the claim was denied a second time. *Id.*  On January 9, 2013, Mr. Wade filed a timely request for a hearing.  On February 11, 2014, a hearing was held by Administrative Law Judge, T. Whitaker ("the ALJ"), wherein Mr. Wade appeared and testified. Also appearing and testifying at the hearing was Selena Earl, an impartial Vocational Expert ("the VE").  On March 26, 2014, the ALJ denied Mr. Wade's claim. *Id.* at 33.  On June 4, 2015, the Appeals Council denied Mr. Wade's request for review of the ALJ's decision, thereby making it

the final decision of the Commissioner. (Filing No. 13 at 3.) *See* 20 C.F.R. § 404.981. Thereafter, Mr. Wade filed his appeal to this Court. (Filing No. 1.)

**B.    Relevant Medical History**

Mr. Wade was born on November 4, 1961, making him 43 years old on his alleged disability onset date and 52 years old at the time of his hearing. Mr. Wade is six feet tall and weighs two hundred and thirty pounds. (Filing No. 11-2 at 42-43.) His highest level of education completed was a GED. *Id.* At the February 11, 2014 hearing Mr. Wade testified to working various small jobs, including painting his neighbor's garage in the summer of 2013 earning $200.00, and other odd jobs including construction clean-up, painting, and carpentry, for which he was paid $50.00 to $60.00 per day. *Id.*

In his application for Social Security benefits, Mr. Wade alleged problems with the following:

> obesity; degenerative joint disease in the left ankle; osteoarthritis in the bilateral knees; history of meniscal tear in the right knee; status post left wrist scaphoid excision and left four-corner arthrodesis secondary to left scaphoid nonunion advanced collapsed wrist; history of left supracondylar/intracondylar humerus fracture status post open reduction internal fixation; osteoarthritis of the right wrist; status post carpal tunnel release of the right wrist; neuropathy in the right wrist; degenerative joint disease second MCP joint and third digit PIP joint of the right hand; status post repair of the right rotator cuff tear and acromial impingement and degenerative joint disease; history of right clavicle fracture; osteoarthritis; history of multiple rib fracture; history of anterior osteophyte at C5 level; degenerative osteophytes in the thoracic spine; history of fracture on the transverse process; COPD; migraine headaches; history of traumatic brain injury; hepatitis C; and bilateral tinnitus.

(Filing No. 11-6 at 15). Mr. Wade's mother completed a questionnaire regarding her observations when Mr. Wade suffers from seizures. She reported that he would foam at the mouth, grit his teeth, and was disoriented, shaky and fearful. *Id.* The seizures would also vary in degree. *Id.*

In 2010, Mr. Wade was treated for multiple health issues including, Hepatitis C, Barrett's esophagus, rib pain, epilepsy, knee pain, wrist pain, and migraines. (Filing No. 11-9 at 19-22.) On November 15, 2010, his doctor indicated no restrictions on Mr. Wade, following a four corner fusion, and scaphoid excision four months prior. *Id.* at 33. Nonetheless, Mr. Wade reported that he continued to suffer pain stemming from a work place injury in 1995, where he fell and required three elbow surgeries. (Filing No. 13 at 6; Filing No. 11-9 at 84.) In November 2011, Mr. Wade underwent treatment for depression and alcohol dependency. *Id.* at 2-3. He was prescribed Vivitrol to help combat his alcoholism. *Id.* In regards to his Hepatitis C condition, in March 2012, Mr. Wade showed no sign of progression and no treatment was recommended by his physicians. (Filing No. 11-2 at 28; Filing No. 11-9 at 49.) Furthermore, a July 2012 electrography chest examination did not signal any symptoms of COPD. (Filing No. 11-2 at 27; Filing No. 11-11 at 10.)

In July 2012, Mr. Wade underwent various medical and psychiatric evaluations by state agency physicians and psychiatrists. (Filing No. 11-10 at 6-29.) In these evaluations, Mr. Wade's allegations regarding the severity of his impairments were found to be only partially credible. *Id.* at 29. While the state physicians found him to have medically determinable impairments, they believed Mr. Wade was still capable of activities of daily living. *Id.*

In April 2013, Mr. Wade underwent surgical repair of his right rotator cuff. (Filing No. 11-14 at 3.) The same month, during a neurology re-evaluation, Mr. Wade stated that his headaches were treated satisfactorily with medication. (Filing No. 11-14 at 24.) In fact, he indicated that the medications would eliminate his headaches within thirty minutes, and that he was able to conduct normal activities on his own. *Id.*

In July 2013, a progress consultation report indicated that Mr. Wade had improved, and had only small limitations in regards to the range of motion and strength of his shoulder. (Filing No. 11-2 at 26; Filing No. 11-15 at 17.) In November 2013, he informed his physician that he was able to ride his bike occasionally, and further physical examinations revealed normal cardiopulmonary function. (Filing No. 11-2 at 27-28; Filing No. 11-14 at 41.)

On October 12, 2013, an x-ray performed on Mr. Wade showed a mid-clavicle fracture. (Filing No. 11-14 at 8.) However, the same x-ray indicated that the fracture was healing, and there was no acute abnormality or significant degenerative change in his right shoulder. *Id.*

C.   **Vocational Expert Testimony**

At the February 11, 2014 hearing, the VE testified in her capacity as a vocational expert. (Filing No. 11-2 at 71-77.) She testified that, under the Dictionary of Occupational Titles, Mr. Wade was previously employed as a construction worker II, parking lot attendant, and industrial truck operator. *Id.* at 67-72. The VE elaborated that construction worker II was an unskilled job requiring heavy strength; parking lot attendant was unskilled and required light strength; and the industrial truck operator, was a semi-skilled job requiring medium strength. The VE also testified that because the jobs Mr. Wade had performed in the past, were industry specific, he had not acquired any transferrable skills. *Id.* at 72.

The ALJ then presented the VE with a hypothetical to determine if Mr. Wade was able to perform any past relevant work. *Id.* at 72-73. In the hypothetical, the ALJ listed extensive limitations, which among others included performing only at a light exertion range, ability to carry 20 pounds or more only occasionally, could only sit for one hour before needing to move around, never do overhead reaching, and needed to be off task five percent of the day. *Id.* In response, to

the hypothetical, the VE opined that an individual with similar limitations would not be able to engage in past relevant work similar to the jobs Mr. Wade had engaged in. *Id.* at 73.

However, the VE testified that an individual with similar limitations to the hypothetical would be able to perform other competitive work in the national economy. *Id.* In particular, she stated that an individual with similar limitations could work as a cashier, electronic worker, and storage facility rental clerk. *Id.* at 73-75. Taking into account the limitations presented by the ALJ in her hypothetical, the VE opined that there would be an estimated 283,800 cashier jobs, 9,740 electronic worker jobs, and 27,870 storage facility rental clerk jobs in the country. *Id.* All three potential job alternative openings were reduced by 75% to account for the similar limitations Mr. Wade had. *Id.*

### D. The ALJ's Decision

At step one of the five step disability analysis the ALJ found that Mr. Wade had not engaged in substantial gainful activity since May 30, 2012. ([Filing No. 11-2 at 19](#).) At step two, the ALJ found Mr. Wade to have the severe impairments he had listed on his application for disability benefits (see above). *Id.* At step three, the ALJ concluded that Mr. Wade did not have an impairment or combination of impairments that met or medically equaled one of the Listed Impairments in 20 CFR Part 404, Subpart P, Appendix 1. *Id.* at 21.

Before reaching step four, the ALJ determined Mr. Wade's residual functional capacity ("RFC"). *Id.* at 23. The ALJ determined Mr. Wade had the RFC to perform light work with the following exceptions:

> Lift and carry 20 pounds occasionally and ten pounds frequently; sit for 60 minutes at one time, for a total of 6 hours in an 8-hour day; stand for 30 minutes and walk about 3 blocks at one time, for a combined total of 6 hours of standing and walking in an 8-hour day; … limited to work that allows him to sit, stand, and walk alternatively; never push or pull hand/arm controls or operate foot controls; never climb ladders, ropes, or scaffolds; occasionally balance, kneel, stoop, crouch,

>  crawl, and climb ramps or stairs; frequent reaching, handling, and fingering with the non-dominant left upper extremity; never reach overhead; only occasional exposure to extreme cold and heat; no exposure to work environments with a noise level rating of 4, i.e. loud noises, and 5, i.e. very loud noises, as those noise level rating [sic] are defined by the Dictionary of Occupational Titles and its companion publication; only occasional exposure to respiratory irritants such as fumes, dusts, odors, and gases; no exposure to unprotected heights, dangerous machinery, slippery, uneven, or moving walking surfaces, open flames, unprotected heat source, or bodies of liquid that pose a drowning hazard; limited to work that allows claimant to be off task 5 percent of the workday, in addition to regularly scheduled breaks.

(Filing No. 11-2 at 23).  At step four, with the RFC in mind, the ALJ found that Mr. Wade was not able to perform past relevant work.  *Id.* at 32.  At step five, the last step of the disability analysis, the ALJ determined that Mr. Wade could perform other jobs in the national economy.  *Id.* at 32.  Therefore, the ALJ found Mr. Wade not to be disabled.  *Id.* at 33.

## II.  LEGAL STANDARD

### A.  Disability Determination

Under the Social Security Act, a claimant is entitled to SSI if he establishes he has a disability.  42 U.S.C. §§ 423(a)(1)(E), 1382.  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), 1382c(a)(3)(A).  To justify a finding of disability, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If disability status can be determined at

any step in the sequence, an application will not be reviewed further. *Id*. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled despite his medical condition and other factors. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment that meets the durational requirement, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three of the sequential analysis, the ALJ must determine whether the claimant's impairment or combination of impairments meets or equals the criteria for any of the conditions included in 20 C.F.R. Part 404, Subpart P, App'x 1 (the "Listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). *See also* 20 C.F.R. Pt. 404, Subpart P, App'x 1. The Listings are medical conditions defined by criteria that the Social Security Administration has pre-determined to be disabling. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004); 20 C.F.R. §§ 404.1525(a), 416.925(a). *See also* 20 C.F.R. Pt. 404, Subpart P, App'x 1. For each Listing, there are objective medical findings and other findings that must be met or medically equaled to satisfy the criteria of that Listing. 20 C.F.R. §§ 404.1525(c)(2)-(5), 416.925(c)(2)-(5).

If the claimant's impairments do not meet or medically equal a Listing, then the ALJ assesses the claimant's residual functional capacity for use at steps four and five. 20 C.F.R. §§ 404.1520(e), 416.920(a)(4)(iv). Residual functional capacity is the "maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008); 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 416.945(a)(1).

At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At step five, the ALJ determines whether the

7

claimant can perform any other work in the relevant economy, given his RFC and considering his age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). *See also* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The claimant is not disabled if he can perform any other work in the relevant economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The combined effect of all of a claimant's impairments shall be considered throughout the disability determination process. 42 U.S.C. §§ 423(d)(2)(B); 1382c(a)(3)(G). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner at the fifth step. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

B. <u>Review of the Commissioner's Final Decision</u>

When the Appeals Council denies review, the ALJ's ruling becomes the final decision of the Commissioner. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009); *Hendersen v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). Thereafter, in its review, the district court will affirm the Commissioner's findings of fact if they are supported by substantial evidence. 42 U.S.C. § 405(g)(2012); *Craft*, 539 F.3d at 673; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dixon*, 270 F.3d at 1176; *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). *See also Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (Substantial evidence must be "more than a scintilla but may be less than a preponderance.").

In this substantial-evidence determination, the court does not decide the facts anew, re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute the court's own judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008); *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Accordingly, if the Commissioner's decision is adequately supported and reasonable minds could differ about the disability status of

the claimant, the Court must affirm the decision. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

Ultimately, the sufficiency of the ALJ's articulation aids the Court in its review of whether the Commissioner's final decision was supported by substantial evidence. *See Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985) ("The ALJ's opinion is important not in its own right but because it tells us whether the ALJ has considered all the evidence, as the statute requires him to do."). While, the ALJ need not evaluate every piece of testimony and evidence submitted in writing, the ALJ's decision must, nevertheless, be based upon consideration of all the relevant evidence. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009); *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). In this vein, the ALJ may not discuss only that evidence that favors his ultimate conclusion but must confront evidence that contradicts his conclusion and explain why the evidence was rejected. *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995).

Further, the ALJ's decision must adequately demonstrate the path of reasoning, and the evidence must lead logically to the ALJ's conclusion. *Terry*, 580 F.3d at 475; *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996). Indeed, to affirm the Commissioner's final decision, "the ALJ must build an accurate and logical bridge from the evidence to [his] conclusion." *Zurawski*, 245 F.3d at 888–89; *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

### III. DISCUSSION

Mr. Wade presents two challenges to the ALJ's decision. The first challenge Mr. Wade asserts is that the ALJ did not rely on substantial evidence in determining Mr. Wade's RFC. (Filing No. 13 at 16.) The second challenge is that the ALJ misrepresented Mr. Wade's RFC in the hypothetical given to the VE. *Id.*

A.  **The ALJ relied on substantial evidence in determining Mr. Wade's RFC**

In regards to his first challenge, Mr. Wade argues that the ALJ did not sufficiently articulate her decision. He also argues that the ALJ failed to consider the aggregate effect of his combined severe impairments. (Filing No. 13 at 16.) The Court is not persuaded by either of these arguments.

1.  **The ALJ's assessment of the evidence was sufficiently articulated**

Mr. Wade contends that the ALJ failed to sufficiently articulate the evidence in a manner which demonstrated that all the important evidence was considered. (Filing No. 13 at 22.) The Court notes that an ALJ's decision must be based upon consideration of all the relevant evidence and must provide a "logical bridge" between the evidence and his conclusions. *Terry*, 580 F.3d at 475 (7th Cir. 2009); *Zurawski*, 245 F.3d at 888-89 (7th Cir. 2001); *Clifford*, 227 F.3d at 872 (7th Cir. 2000). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. Further, an ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his findings. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003); *Zurawski*, 245 F.3d at 888 (7th Cir. 2001). An ALJ need not provide a written evaluation of every piece of testimony and evidence. *Haynes*, 416 F.3d at 626; *Golembiewski*, 322 F.3d at 917; *Diaz*, 55 F.3d at 308 (7th Cir. 1995). Instead, an ALJ need only minimally articulate his justification for accepting or rejecting specific evidence of disability. *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008).

The ALJ's reasoning for her RFC determination of Mr. Wade spanned nine pages. (Filing No. 13 at 23-31.) In these pages, the ALJ not only detailed the impairments that Mr. Wade

complained of, but also explained why the he found them to not be as limiting as Mr. Wade claimed they were. For example, the ALJ acknowledged the left scaphoid excision and left four-corner arthrodesis that Mr. Wade had performed in 2010, but then noted how Mr. Wade had not attended post-operation physical therapy regularly. *Id.* at 24. Additionally, the ALJ noted that x-rays had shown healing of the four-corner fusion after surgery. *Id.* Further, the ALJ details the issues Mr. Wade had with his migraines and acknowledged that Mr. Wade's medical record indicated a problem with migraines. The ALJ noted that Mr. Wade stated the migraines occurred only two or three times a month, and were relieved with medication. ([Filing No. 11-2 at 60-61](#).) Regarding Mr. Wade's knee issues, the ALJ noted that a 2011 MRI indicated a medial and lateral meniscal tear, as well as osteoarthritis. *Id.* at 25. The ALJ further noted that despite Mr. Wade's knee issues, he was non-compliant with physical therapy and continued to treat his knee problems with pain medication. *Id.* In regards to Mr. Wade's shoulder and wrist problems, the ALJ cited several progress reports indicating an increase in motion and strength. *Id.* at 26.

The ALJ stated that the level of functioning demonstrated by Mr. Wade's daily activities was not consistent with his alleged limitations. For example, the ALJ noted that Mr. Wade testified that he manages his own grooming and hygiene, mows a small yard, goes to the store every two weeks, engages in seasonal work, enjoys doing crossword puzzles and watching television, and uses a computer on a daily basis. (Filing No. 11-2 at 30.)

Mr. Wade argues that his daily activities were far more restrictive than what the ALJ portrayed them to be. ([Filing No. 13 at 19](#).) Specifically, Mr. Wade asserts that he can only mow the yard one section at a time; that he only spends half an hour a day on the computer and only ten minutes per day on crossword puzzles; and that it took him one month and a half to paint a small garage. *Id.* Regardless, the difference in Mr. Wade's description of his daily activities is not

11

significantly different.

Additionally, the ALJ did not solely rely on Mr. Wade's daily activities to make the RFC determination. The ALJ also discussed the opinions of various medical experts, both treating and non-treating. *Id.* at 30-31. In this regard, the ALJ stated that some weight was given to the State agency medical and psychological consultants, who concluded that Mr. Wade was not disabled. *Id.* at 30. In the evaluations of Mr. Wade, the state physicians noted that Mr. Wade was able to use public transportation, shop, attend to his own hygiene, follow instructions, do laundry, prepare meals, and clean dishes. ([Filing No. 11-10 at 29](#).) The State physicians also noted that he was able to interact well with others at his substance abuse treatments. *Id.* Thus, the state physicians opined that Mr. Wade's allegations regarding his impairments were not as severe as alleged. *Id.* The ALJ stated that these opinions were given weight because the State agency medical and psychological consultants were highly qualified in Social Security disability evaluation. ([Filing No. 11-2 at 30](#).)

In sum, the Court finds that the ALJ has provided a logical bridge between the evidence and the conclusions made. *Terry*, 580 F.3d at 475 (7th Cir. 2009); *Zurawski*, 245 F.3d at 888-89 (7th Cir. 2001); *Clifford*, 227 F.3d at 872 (7th Cir. 2000). The Court considers the ALJ's analysis to be well-developed and adequately supported by evidence in the record. *See Craft*, 539 F.3d at 673 (7th Cir. 2008) ("[t]he ALJ is not required to mention every piece of evidence but must provide an accurate and logical bridge between the evidence and the conclusion"); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 1997) (noting that an ALJ "must articulate, at least minimally, his analysis of the evidence so that this court can follow his reasoning."). Accordingly, the Court concludes that the ALJ's opinion is based on substantial evidence.

### 2. The ALJ did not fail to consider Mr. Wade's mental impairments in combination

Next, Mr. Wade argues that the ALJ did not consider all of the severe and non-severe impairments listed in combination. (Filing No. 13 at 24.) Specifically, he takes issue with the ALJ's failure to mention some of his mental impairments including depression and anxiety. *Id.* In support, Mr. Wade cites to *Clifford v. Apfel*, in which the Seventh Circuit held that an ALJ's failure to consider the aggregate effect of all of the claimant's ailments, including the non-severe ones, was reversible error. 227 F.3d at 873 (7th Cir. 2000). However, in that case the ALJ had failed to properly consider the claimant's obesity level at all. *Id.* While the court recognized that an ALJ must not include a discussion of all evidence in the record, the court found the omission of the obesity impairment suffered by the claimant to be indicative of a failure to assess the aggregate effect of all impairments. *Id.* The omission of the obesity impairment in that case was erroneous because the claimant's weight problem was often discussed by the treating physicians, and the obesity directly related to other impairments of the claimant. *Id.*

The ALJ in Mr. Wade's case clearly differs from the ALJ in *Clifford*. Here, the ALJ discussed Mr. Wade's depression or anxiety issues. Mr. Wade's mental health issues were addressed extensively and in several portions of the decision. (Filing No. 11-2 at 20-21; Filing No. 11-2 at 30.) For example, the ALJ specifically mentioned that Mr. Wade's "[m]ental impairments of depression, anxiety, cognitive disorder, nicotine dependence, and alcohol abuse and dependence, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere". (Filing No. 11-2 at 20.) The ALJ supported this conclusion by citing to medical records from May and June of 2012 that indicated improvement of Mr. Wade's mental impairments due to sobriety. *Id.* Further, the ALJ cited to medical records of October 2012, in which Mr. Wade stated that his

depression was well controlled. *Id.*

In addition to the evidence in the record cited above, the ALJ also conducted an analysis of mental disorder determinability, as set out in Listing 12.00. *Id.* at 20-21. In this regard, the ALJ found that Mr. Wade had only mild limitations in the first three functional areas as set out in the Listing. *Id.* The ALJ found mild limitations in daily living, social functioning, and concentration, persistence, or pace. *Id.* With respect to the fourth criteria of the Listings governing mental disorders, the ALJ found Mr. Wade to not have experienced any periods of decompensation. The ALJ's assessment of Mr. Wade's mental impairments is consistent with the opinions of the State agency psychologists, who also found "mild limitations". ([Filing No. 11-10 at 17-29](#).) The Court finds the ALJ's assessment of the evidence to be demonstrative of his non-failure to neglect Mr. Wade's mental impairments.

The Court also notes that the ALJ discussed Mr. Wade's Global Assessment of Functioning ("GAF") scores but found them to be in accordance with the RFC determination. *Id.* at 30. Specifically, the ALJ noted that Mr. Wade's GAF scores ranged from a low of 51 to a high of 58, which indicated moderate difficulties in social, occupational, or school functioning. *Id.* The ALJ then stated that these GAF scores were a mere subjective snapshot in time of Mr. Wade's mental conditions, and were not a substitute for a longitudinal evaluation. *Id.* In discussing Mr. Wade's GAF scores and why they were not inconsistent with the RFC determination, the ALJ's determination was made in light of all the evidence.

The Social Security Administration and courts within this Circuit have repeatedly opined that a claimant's GAF scores, while used to make treatment decisions, do not directly correlate with the severity requirements of the regulations and that the ALJ is therefore not bound by them when determining disability. *See* Revised Medical Criteria for Evaluating Mental Disorders and

Traumatic Brain Injury, 65 Fed. Reg. 50746, at 50764-50765 (2000) ("The GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorders listings"); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *Wilkins v. Barnhart*, 69 Fed. App'x 775, 780 (7th Cir. 2003) (unpublished); *Sparks v. Colvin*, 1:14-CV-1519; 2015 WL 3618344, at *6 (S.D. Ind. 2015) ("The [GAF] score has limited value in determining whether a [claimant] can engage in substantial gainful activity."). *Anderson v. Astrue*, 2010 WL 3522574 at *8 (N.D. Ind. 2010) (noting that an ALJ is not required to determine the extent of an individual's disability entirely upon GAF scores as such scores do not reflect a clinician's opinion of functional capacity).

Thus, the Court concludes that the ALJ did not fail to consider the aggregate effect of Mr. Wade's mental impairments.

B.  **The ALJ properly relied on the Vocational Expert's testimony to find that Mr. Wade was not disabled**

Finally, Mr. Wade argues that the ALJ failed to provide an accurate representation of his RFC to the Vocational Expert. (Filing No. 13 at 16.) In particular, he argues that the ALJ did not properly include limitations in the hypothetical that accounted for his migraines. The Court disagrees.

As noted above, the ALJ included a detailed discussion of Mr. Wade's migraines. Specifically, the ALJ noted that Mr. Wade indicated that he has a headache two or three times per month, and they are relieved with Topomax. (Filing No. 11-2 at 24.) He noted that Mr. Wade did not identify any specific triggers for his headaches. *Id.* The ALJ found that migraine headaches did not limit Mr. Wade's ability to work, in accordance to his RFC. (Filing No. 11-2 at 31.) The ALJ noted that Mr. Wade alleged no specific limitations related to headaches. (Filing No. 11-2 at 29.) Nonetheless, the ALJ accommodated for Mr. Wade's migraines by allowing his RFC to include environmental restrictions that might be aggravating factors for his migraines and included

15

an additional limitation of being able to be off task for five percent of the day, to account for possible migraine problems. The Court finds that such accommodations were proper in light of Mr. Wade's claim to have such migraines only two or three times a month, and that the migraines would be relieved with medication. *Id.* at 61. These accommodations were included by the ALJ in his RFC and presented to the VE. ([Filing No. 11-2 at 72-73](#).) Additionally, the Court notes Mr. Wade has not provided any evidence or proposed what a more realistic limitation would be to accommodate his migraines.

The Court has concluded that the ALJ's RFC decision was substantially supported and adequately articulated, thus, the Court finds that the hypothetical presented to the VE was proper. An ALJ's factual conclusions are entitled to deference so long as they are supported by substantial evidence in the record. *See Elder*, 529 F.3d at 413; *Craft*, 539 F.3d at 673; *Lopez,* 336 F.3d at 539 (stating that in a substantial evidence determination, the court will not reweigh evidence); *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (stating that the court will not overturn an ALJ's decision where it is supported by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion).

The ALJ correctly provided the VE with an accurate representation of Mr. Wade's RFC. Therefore, the ALJ's reliance on the VE's opinion that Mr. Wade could perform jobs that are available in the national economy was proper.

## IV. **CONCLUSION**

For the aforementioned reasons, the Court **DENIES** Mr. Wade's request for remand and **AFFIRMS** the Commissioner's final decision. The Court will enter final judgment by separate order.

**SO ORDERED.**

Date: 07/11/2016

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov